HOWE, Appellant, v. CRUMLEY, JONES & CRUMLEY COMPANY, Appellant, and OHIO FARMERS INDEMNITY COMPANY, Appellee.

Ohio Appeals, First District, Clermont County.

No. 159. Decided March, 1944.

Speidel & Nichols, Batavia, for Glenn R. Howe.

Harry Britton, Batavia, and Alex S. Dombey, for Crumley, Jones & Crumley.

August A. Rendigs, Cincinnati, and Elmer Strasser, Cincinati, for Ohio Farmers Indemnity Co.

**OPINION**

By ROSS, P. J.

This is an appeal on questions of law from the Court of Common Pleas of Clermont county, wherein judgment was rendered in favor of the defendant.

The plaintiff brought suit and recovered a judgment against The Crumley, Jones & Crumley Company, engaged in the engineering and contracting business, and hereinafter designated as the "insured." In a proceeding based upon a supplemental petition, the plaintiff by virtue of the provisions of §9510-4 GC, sought to have certain insurance carried by the insured with its co-defendant, The Ohio Farmers' Indemnity Company, applied to the satisfaction of its judgment against the insured.

In this supplemental proceeding, by stipulation, trial was had to the court without the intervention of a jury. The final judgment in the case does not state the basis or finding upon which the court reached its conclusion that judgment should be rendered for the defendant Insurance Company. An opinion was filed by the Court, but was not journalized or ordered journalized. As the Court speaks only through its journal, this filing did not have the effect of a journalized decision upon all the issues presented. Under the impression that it had such effect, counsel for the plaintiff filed a motion for new trial, addressed to such opinion, which was overruled and judgment entered for defendant. No motion for new trial was filed after this judgment was entered upon the journal of the Court, hence, the question of the weight of the evidence is not raised in this appeal. **Steinle v City of Cincinnati, 142 Oh St 550; State, ex rel. Curran v Brookes, Jr., 142 Oh St 107; In Re Estate of Lowry, 140 Oh St 223; Eagle Savings & Loan Association v Hucke, et al., 39 Abs 480.** Paragraph 5 of the Revised Syllabus to State, ex rel. Curran, v Brookes, Jr., (Ohio Bar, Oct. 25, 1943) is:

"A 'decision is rendered' within the meaning of **Section 11578, General Code,** when there is filed with the clerk for journalization a finding which determines the issues sub-

mitted. (**In Re Estate of Lowry, 140 Oh St 223,** approved and followed.)"

The Ohio Farmers' Indemnity Company, hereinafter designated the insurer, issued and delivered to the insured a policy by virtue of which the insured was protected against liability for injury to persons and property of others occasioned by the use and operation of a fleet of trucks, specifically designated in the policy of insurance. Sometime after such policy of insurance became effective, one of the trucks so insured was damaged by a collision with another truck belonging to the insured. It was necessary to abandon the use of such insured truck, and it was withdrawn from active operation in the business of the insured. The insured truck is designated as a 1938 White truck. It was replaced by the insured by another truck known as the 1930 White truck.

This latter substituted truck, while being used in the business of the insured, became involved in a collision with a vehicle owned by the plaintiff, who for the injury suffered recovered the judgment against the insured which forms the basis for the instant proceeding. Both the plaintiff and the insured claim that the 1930 White truck, so substituted for the insured 1938 White truck, is covered by the policy of insurance, although the 1930 White truck was not designated in the policy as being covered.

It also appears that the 1930 White truck was owned by the insured at the time it effected the insurance in question, and was excluded from coverage at that time, because it was not the intention of the insured to use the same in its business.

It is the claim of the defendant insurer that the 1930 White truck was not covered by the policy, for two reasons, first, because there was no agreement to insure the insured against liability for its use, and, second, because the insured had other insurance covering this truck, and the policy specifically excluded liability on the part of the insurer where such was the case.

The decision of these issues is primarily, at least, dependent upon the construction of the language of the policy, and particularly one clause thereof:

### "V. AUTOMATIC INSURANCE FOR NEWLY ACQUIRED AUTOMOBILES

If the Named Insured who is the owner of the automobile acquires ownership of another automobile, such insurance as is afforded by this Policy applies also to such other

automobile as of the date of its delivery to him, (a) if it replaces an automobile described in this Policy, and if it may be classified for the purpose of use stated in this Policy, but only to the extent the insurance is applicable to the replaced automobile, and (b) if it does not replace an automobile described in this Policy, and if it is used for pleasure purposes or in the business of the Named Insured as stated in the Declarations, and if the Company insures all automobiles owned by the Named Insured at the date of such delivery, but only to the extent the insurance is applicable to all such previously owned automobiles. The insurance afforded by this Policy terminates upon the replaced automobile at the date of such delivery. The provisions of this paragraph do not apply (a) to any loss against which the Named Insured has other valid and collectible insurance, or (b) unless the Named Insured notifies the Company within ten days following the date of delivery of such other automobile, or (c) except during the Policy Period, but if the date of delivery of such other automobile is prior to the effective date of this Policy the insurance applies as of the effective date of this Policy, or (d) unless the Named Insured pays an additional premium required because of the application of this insurance to such other automobile."

Now, at the outset, the title to the clause is significant, and, while not a part of the clause in question, it is part of the policy and cannot be wholly ignored. This title applies specifically and definitely to "Newly Acquired Automobiles." If the language of the clause is antagonistic in significance to the implications of the title, of course, whichever is more favorable to the insured would control by virtue of the well-established rules that where ambiguity or indefiniteness of meaning occur in a policy, that sense most favorable to the insured must prevail. Companion to this rule, however, if not a part of it is the requirement that words and phrases used in a policy of insurance are to be given their ordinary reasonable meaning, and are not to be distorted to either evade or impose liability. **Greulich v Monnin, 142 Oh St 113, 116; National Life & Accident Co. v Ray, 117 Oh St 13, 22; General Casualty & Surety Co. v Stevens, et al., 11 Abs 517.**

It is also true of course that the plaintiff can have no greater rights in the policy than those possessed by the insured. **Stacey v The Fidelity & Casualty Co. of New York, et al., 114 Oh St 633; Luntz, et al. v Stern, 135 Oh St 225, 230.**

The words used in the caption of the clause have a prospective implication. Newly—indicates recent acquisition. The

fair interpretation of the title would be that the clause applied to vehicles acquired, either after the effective date of the policy, or not long before such effective date. As will later be seen the title of the clause and the substance thereof are not inconsistent in implications favorable to the insured.

Now taking up the language of the clause, it becomes the duty of this Court, as it was the duty of the trial court, to determine, first, whether giving the words used their ordinary and usual sense, interpreting the whole most favorably to the insured, liability is imposed upon the defendant insurer.

It is stated: "If the Named Insured - - - - - acquires ownership of another automobile."

It is to be remembered that the policy constitutes an integration of the agreement and intention of the parties as and of the date it was delivered and became effective. All that the parties agreed to is to be found in the policy. This Court, therefore, must put itself in the position of the parties and consider the contract as of the date when it became effective. Standing at this point, the parties as far as the statement just quoted is concerned must be considered to have in mind some act or occurrence in the future, that is, after the effective date of the policy. This language again is prospective in its connotation.

Continuing—"Such insurance as is afforded by this policy, applies also to such other automobile." Again, the status of the parties at or after the effective date of the policy is here involved. At the time the policy became effective the insured had the option to insure or not insure any, all, none or some of the vehicles it owned. Having made its election, can it be considered that here the insurer or the insured could have been considering other vehicles owned by the insured, but specifically excluded from coverage, by the naming and designation of the specific vehicles insured? This statement deals with insurance that did not exist until the effective date of the policy. It cannot apply to a vehicle which the insured could have covered and did not.

Again, proceeding—Insurance is afforded upon the vehicle "as of the date of its delivery to him."

In the instant case, the insured had possessed the substituted truck for a long period prior to the effective date of the policy. It had been **delivered** to it long before such date. Only by completely ignoring the usual and ordinary meaning of the word "delivered" and rewriting the phrase can the words be interpreted as meaning that there would be an application of the insurance provided for in the policy upon an insured truck to one then owned by the insured and sub-

stituted for the one insured in the policy, long after its effective date.

At this point it is proper to say that all the authorities cited by the plaintiff have been carefully examined, particularly is this true of the case of Thompson v State Automobile Mut. Ins. Co., 11 South Eastern (2d.) 849, a decision by the Supreme Court of Appeals of West Virginia, in 1940, in which a similar policy contract, under circumstances somewhat similar to those here involved, was considered and construed.

The respect due the reasoning of the Court is fully entertained, but this Court is not bound by the reasoning and conclusion of the Court in that case.

The obligation rests upon this Court to construe the policy here presented, and if this Court cannot adopt the conclusions of the West Virginia Court, the reflection may be upon this Court, rather than upon such Court. If, however, it appears to this Court that the reasoning employed is not sound, the fact that a contrary conclusion is reached is not controlling.

It is not apparent why when the parties to this contract of insurance used the term "delivery" it should now be determined that they meant to say **substitution** or **replacement.**

Two provisional clauses follow. Clause (b) has no application here except to reinforce the conclusion that the whole clause (with an exception here later considered) is prospective in character.

Clause (a) applies the insurance appropriate to the car insured and designated in the policy to the substituted vehicle, if the newly acquired and delivered vehicle, replaces that in sured and if it falls in the same classification, and it is provided that the same limits apply to the substituted vehicle as to that which it replaces.

Applying the clause to a vehicle, acquired and delivered after the effective date of the policy, gives the clause a perfectly natural and reasonable interpretation, favorable to the insured.

The requirement that the language of a policy be construed in favor of the insured does not require it to be strained to cover every claim upon which an insured may insist, no matter how superlatively favorable. It requires a favorable construction only. Such a construction is here given. If the insured had qualified under the language used, it would have been covered.

Favorable construction, in other words, does not require imposing upon the insurer a gratuitous obligation not justi-

fied by the usual meaning of the words employed. There is a difference between a favorable construction and a favorable finding for the insured or those claiming under him.

Again, how can the following language be harmonized with the claim of the plaintiff that the clause covers a vehicle owned by the insured long before the effective date of the policy, delivered long before such date, and not designated by the insured for coverage. "The insurance afforded by this policy terminates upon the replaced automobile at the date of such delivery." If the claim of the plaintiff is correct, the "insurance afforded" would have terminated before it was in effect, for the delivery in the instant case ante dated the effective date of the policy.

Again, to find for the plaintiff, the clause must be rewritten, words must be ignored and some completely distorted in meaning. If the clause is construed as applying to vehicles acquired and delivered after its effective date a favorable and reasonable meaning is given the words. If it is applied to a vehicle acquired and delivered before the effective date of the policy—the clause simply is unintelligible. Just because it does not coincide with the construction placed upon it by the plaintiff, however, does not make the language either unintelligible or ambiguous. Ambiguity may not be injected into a phrase or clause which has a definite meaning, giving the words used their ordinary and usual sense, merely in order to secure another distorted and unjustifiable interpretation.

This conclusion as to the meaning is again reinforced by consideration of other language following:—"The provisions of this paragraph do not apply - - - - (b) unless the Named Insured notifies the Company within thirty days following the date of delivery of such other automobile."

If the parties had meant within thirty days of substitution, certainly, those words could have been used. It is nothing short of complete abrogation of usual meaning to say that when the insurer used the word "delivery" it meant substitution or replacement. All of these words were used in their proper and usual sense in other parts of the clause. A favorable construction does not require that the words should be given a proper usual meaning in one place and a distorted meaning elsewhere.

Sub-clause (c) is relied upon heavily by the plaintiff as sustaining his contention.

This portion of the clause—putting the phrases into correct juxtaposition reads: "The provisions of this paragraph do not apply - - - - - (c) except during the policy period, but if the date of the delivery of such other automobile is prior

to the effective date of this policy, the insurance applies as of the effective date of this policy."

The plaintiff seeks to vitiate all the other plain, simple provisions of the clause because the insurer here considers a situation where the vehicle is acquired, delivered and substituted prior to the effective date of the policy. It would seem that the exact opposite conclusion should be reached and that because here is considered a situation of prior delivery and substitution the other parts of the clause, obviously applying to post-delivery and post-substitution, should be given their full natural effect.

Now just what does clause (c) mean and does it cover the instant situation?

Certainly, it cannot apply unless two things occurred, prior to the effective date of the policy, delivery and replacement. "Such other automobile" is the replacing automobile. Now if the insurance is to apply "as of the effective date of this policy" the clause patently can not apply to a situation which developed long after such effective date. Otherwise, in the instant case, the replacing automobile would have been insured from the effective date of the policy, although it did not replace an insured vehicle, specifically designated as such in the policy, until long after such effective date.

To what situation does sub-clause (c) apply then?

It applies to a vehicle substituted before the effective date of the policy for one designated in the policy, but delivered before the effective date, upon which insurance takes effect upon the effective date of the policy, To take such effect the **substitution** must also have taken place before such effective date, otherwise as has been said, both the insured vehicles and a replacing vehicle not even substituted by the insured at such effective date, must both have been covered from the effective date.

Suppose that shortly before the policy became effective what occurred in the instant case had occurred. It was too late to have the replacing vehicle substituted in the policy.

The insurer desired to permit the insured to be covered in this emergency. While one vehicle was actually described in the policy, it had become useless and another had been substituted. The clause in plain language states that then as of the effective date of the policy, the substituted vehicle is covered, proper notice of the change being given within thirty days of delivery.

The plaintiff complains that this would exclude an automobile delivered more than thirty days before the effective date of the policy or possibly even one delivered in less than thirty days.

The answer to such complaint is that had the vehicle been delivered more than thirty days or within a time permitting re-designation after **substitution,** there would have been no reason why the insured having ample opportunity could not have arranged for a re-designation of the vehicle to be insured, replacing a vehicle named in the policy and abandoned before the policy become effective.

The sub-clause is evidently designed to cover a situation where the date of acquisition, delivery and substitution was so close to the effective date that the insured had not sufficient time to protect himself by a change in the policy. In the absence of this sub-clause the insured might find himself in the position of having the policy go into effect upon a vehicle which was wholly useless.

But the plaintiff states that is just exactly what has now occurred. The exigencies of the situation required immediate replacement on the job. He had a vehicle available. Its immediate use was demanded. Why should not the policy cover this situation? The only answer is that the policy unfortunately did not cover such a situation, and no court can write into a policy a provision not plainly there, simply because it would be most desirable to the insured if it were in the policy. Possibly there are policies which contain such desirable features.

Certainly, an owner of vehicles might seek such a policy. The premium might or might not be greater. It might contain other less favorable provisions. However, the case may be, the desirability of this feature cannot take the place of its existence.

The extent of the coverage has been outlined. It does not cover the substituted 1930 White truck, and the trial court was correct in its conclusion to that effect.

There are decisions in accord with the conclusions here reached. They are no more binding upon this Court than those adverse to its conclusions.

We mention the case of Commercial Standard Ins. Co. v. Central Produce Co., et al., 42 Fed. Supp., 31, a decision by the United States District Court of Tennessee. There is of course a variation in the exact facts involved in that case and the case at bar. It is the judgment of this Court that the Tennessee Court reached a conclusion consistent with the requirements of the language of the policy presented to it.

The plaintiff bitterly, in caustic and sarcastic terms criticizes the opinion of the trial judge. Passing the impropriety of such conduct, the reasoning and conclusions of

the Court of Common Pleas of Clermont County seem to fairly and fully cover the issues presented, and its judgment is, therefore, affirmed.

HILDEBRANT & MATTHEWS, JJ., concur.